UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 7

Patrice Lynnette Harold,                        Case No. 16-40659

　　　　　Debtor.                                Hon. Phillip J. Shefferly
_____/

United States of America,                       Adversary Proceeding
                                                No. 16-5041-PJS
　　　　　Plaintiff,

v.

Patrice Lynnette Harold,

　　　　　Defendant.
_____/

## OPINION GRANTING
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## Introduction

Patrice Lynette Harold ("Debtor") is a Chapter 7 bankruptcy debtor. The

United States of America (hereafter, "IRS"), filed a complaint seeking a determination

that the Debtor's federal income tax debts for the years 2004 through 2012, and 2014,

are nondischargeable in her bankruptcy case. The IRS filed a motion for partial

summary judgment regarding the taxes for 2008 and 2010. For the reasons set forth

in this opinion, the Court will grant the motion and hold that the Debtor's federal income taxes for 2008 and 2010 are nondischargeable under § 523(a)(1)(B)(ii) of the Bankruptcy Code.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Procedural History

The Debtor filed a Chapter 7 bankruptcy petition on January 20, 2016. On November 15, 2016, the IRS filed a three count complaint under § 523(a)(1)(A), (B) and (C) of the Bankruptcy Code. On January 5, 2018, the IRS filed a motion for partial summary judgment ("Motion") (ECF No. 75) with respect to counts I and II of the complaint. The Motion is supported by lengthy transcripts of depositions, declarations and documents. At the joint request of the parties, the Court granted the Debtor an extended period of time to respond to the Motion, in part because of ongoing discovery and in part because of some related litigation pending in the United States District Court for the Eastern District of Michigan.

On April 9, 2018, the Debtor filed a response (ECF No. 97) to the Motion, also supported by lengthy transcripts of depositions, documents and declarations. In the

response, the Debtor consents to summary judgment on count I but opposes summary judgment on count II.

On July 17, 2018, the IRS filed a reply (ECF No. 100) to the Debtor's response.[1]  On July 23, 2018, the Court heard the Motion and took it under advisement.  The Court is now ready to rule.

## Facts

From its review of the Motion, the response, the reply and the entire file, the Court finds that the following facts are not in dispute.

The Debtor is married to Thomas Barrow ("Barrow").  Historically, they have filed joint federal income tax returns.  In March, 2009, Barrow hired Lothamer Tax Resolution, Inc. ("Lothamer") and gave it a power of attorney to help him and the Debtor try to resolve with the IRS their past due taxes going back to 2003.  The person assigned to their file at Lothamer was Akono Gross ("Gross").  While Gross was working on helping Barrow and the Debtor address their past due taxes, the Debtor and Barrow obtained a six-month extension of the April 15, 2009 due date for their 2008 return.

---

[1] Attached to the reply are two new declarations.  L.B.R. 9014-1(f) (E.D. Mich.) permits a party moving for summary judgment to file a reply up to seven pages in length, not less than three business days before a hearing on the motion, but does not permit the filing of additional declarations.  Therefore, the Court will disregard the two declarations attached to the reply.

On June 2, 2009, Gross sent a fax to Antoinette Cooley ("Cooley"), the IRS revenue officer assigned to the file for the Debtor and Barrows. The fax stated that the 2008 return for the Debtor and Barrows "was sent to the IRS for filing on June 1, 2009." Gross enclosed the first two pages of the return with the fax. The 2008 return had been prepared by Barrow, but Barrow says he gave the return to Gross to file. Gross does not remember if he mailed the return for filing, but says that it was ordinarily his practice to file returns by regular mail, sent to the IRS service center, and not to a revenue officer.

On June 16, 2009, Gross sent a second fax to Cooley to "formally request to set up a step up payment plan with the IRS to settle individual income taxes owed." The fax also stated "[p]lease find enclosed copy of the 2008 individual income tax return" for the Debtor and Barrow. Gross testified at his deposition that this was a "courtesy copy," not intended for filing.

On July 6, 2009, Gross sent a third fax to Cooley, enclosing a Form 433-D, Installment Agreement, for the Debtor and Barrow. The tax periods covered by the installment agreement were 2003 through 2008.

On July 10, 2009, Cooley sent a letter to the Debtor and Barrow, with a copy to Gross, that stated that the IRS "approved your request to pay your taxes in

-4-

installments." The letter stated that "the amount you owe as of 07/09/09 is $132,526.04." On the second page, the letter stated that

This installment agreement includes taxes for the following forms and tax periods:

| Form | Tax Period | Form | Tax Period | Form | Tax Period |
|------|-----------|------|-----------|------|-----------|
| 1040 | 200312 | 1040 | 200412 | 1040 | 200512 |
| 1040 | 200612 | 1040 | 200712 | | |

Unlike the installment agreement sent by Gross to Cooley just a few days earlier, the taxes and periods covered in the approval did not include or otherwise mention 2008. Neither Gross nor Cooley remember ever speaking about this discrepancy with each other. Gross testified at his deposition that there must have been some mistake by Cooley and the IRS in not including 2008. Cooley testified at her deposition that 2008 would not have been included if the 2008 return had not yet been filed at the time of the installment agreement. Once the IRS sent its July 10, 2009 approval, Gross and Lothamer did not do any further work for the Debtor or Barrow. Eventually, the Debtor and Barrow defaulted under the installment agreement.

The 2010 return for the Debtor and Barrow was due on April 15, 2011. The Debtor and Barrow obtained a six-month extension. Barrow testified at his deposition that he prepared the 2010 return and sent it directly to Cooley, at her express direction.

Barrow testified that he sent the return by certified mail, but could not locate the mail receipt card.

Years later, IRS revenue officer Christopher Smith ("Smith") was assigned to the Debtor's and Barrow's file to collect their outstanding tax debt. One of Smith's duties was to "secure any delinquent tax returns." At some point, Smith became aware that the IRS had no record of the Debtor's and Barrow's 2008 and 2010 returns being filed. In January, 2016, he contacted Lothamer, which still had a power of attorney on file with the IRS, and requested copies of the 2008 and 2010 returns. On January 8, 2016, Bridgette Austin, senior case manager at Lothamer, sent an email to Smith that stated as follows:

> Attached, please find copies of the signed 2008 and 2010 1040 for [the Debtor and Barrow]. Please note, the 2008 return was filed with [revenue officer] Antoinette Cooley on June 16, 2009. I have included the fax confirmation page of this return, along with the 433-D sent by [ ] Cooley, which included the 2008 tax year. The taxpayers are requesting the 2008 return be processed and that the filing date and any resulting interest and penalties be adjusted to reflect the original filing date.
>
> Mr. Barrow is still looking for his signed certified slip for the original filing date of the 2010 return. We will provide this when we receive it.

Smith then "caused those Forms 1040 to be filed on or about January 15, 2016." The same day, the IRS assessed taxes based on the filed returns, in the amount of $38,604.00 for 2008 and $29,559.00 for 2010.

## Summary Judgment Standard

The Motion is brought under Fed. R. Civ. P. 56, incorporated in this adversary proceeding by Fed. R. Bankr. P. 7056.  Summary judgment under this rule is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247-48.

"There is no issue for trial . . . unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (citing Anderson, 477 U.S. at 249).  The nonmoving party "must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Id. (quoting Anderson, 477 U.S. at 257).  "The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial."  Brown v. City of Memphis, 921 F. Supp. 2d 865, 868 (W.D. Tenn. 2013) (citing Sagan v. United States, 342 F.3d 493, 497 (6th Cir. 2003)).  "'As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

-7-

summary judgment.'" <u>Leichner v. Norfolk & Western Ry. Co.</u>, 946 F.2d 895 (Table), 1991 WL 203746, at *2 (6th Cir. Oct. 7, 1991) (quoting <u>Anderson</u>, 477 U.S. at 248).

## **Discussion**

### Section 523(a)(1)(B)

A creditor seeking a determination that a debt is nondischargeable under one of the exceptions to discharge in § 523(a) of the Bankruptcy Code, has the burden to prove by a preponderance of evidence that all of the elements of the applicable exception are present. <u>Meyers v. Internal Revenue Service</u> (<u>In re Meyers</u>), 196 F.3d 622, 624 (6th Cir. 1999) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 290-91 (6th Cir. 1991)). In count II of its complaint, the IRS seeks a determination that the Debtor's 2008 and 2010 taxes are excepted from her discharge under § 523(a)(1)(B), which excepts from discharge a debt for a tax "with respect to which a return . . . (i) was not filed or given; or (ii) was filed or given after the date on which the return . . . was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]"

In the Motion, the IRS argues that there are no genuine issues of material fact in dispute with regard to any element of subsection (ii), frequently referred to as the "two-year rule." According to the IRS, the Debtor's 2008 and 2010 tax returns were due to be filed on October 15, 2009 and 2011, respectively, but they are not shown as

filed by those dates on the IRS's records. Those records contain a Form 4340, Certification of Assessments, Payments, and Other Specified Matters, for both 2008 and 2010. As explained by Smith in his declaration, these forms show both the 2008 and 2010 returns as having been filed on January 15, 2016, just a few days before the Debtor filed her Chapter 7 petition, and show a tax debt owing for each of those years. "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." Gentry v. United States, 962 F. 2d 555, 557 (6th Cir. 1992) (citations omitted). See also United States v. Case (In re Case), 564 B.R. 450, 455-56 (Bankr. N.D.N.Y. 2017) (finding that Form 4340 is self-authenticating and any assessment certified therein is "presumptively correct," and the debtor "bears the burden of proving the invalidity of a tax assessment") (citations omitted).

In her response to the Motion, the Debtor argues that the IRS records are wrong, and that both the 2008 and the 2010 returns were timely filed far more than two years before the Debtor filed bankruptcy. The Debtor argues that the 2008 return was timely filed in two separate ways: first when Gross sent it by regular mail to the IRS, and second when Gross faxed a copy of the return to Cooley on June 16, 2009. The Debtor argues that the 2010 return was timely filed when Barrow sent it to Cooley by

certified mail on October 6, 2011. According to the Debtor, because both returns were timely filed, any unpaid tax debt for 2008 or 2010 falls outside of the two-year rule of § 523(a)(1)(B)(ii).

The IRS argues that none of the testimony relied on by the Debtor creates any genuine issue of material fact regarding the filing dates of the Debtor's 2008 and 2010 returns shown on the Form 4340s because of what is known as the "physical delivery rule."

### The physical delivery rule

The Internal Revenue Code ("IRC") does not expressly define what it means to "file" a return. But controlling case law does. A document is filed with the IRS when it "is delivered and received." <u>Miller v. United States</u>, 784 F.2d 728, 730 (6th Cir. 1986) (citing <u>United States v. Lombardo</u>, 241 U.S. 73, 76 (1916)). The physical delivery rule has two statutory exceptions, both of which apply only to a return that is sent to the IRS by mail. The first exception, made by IRC § 7502(a)(1), provides that, if a return is sent by U.S. mail before the filing deadline, but is not actually delivered until after that deadline, the postmark is the deemed date of delivery. The second exception, made by IRC § 7502(c)(1), provides that, if a return is sent by registered or certified U.S. mail, such registration shall be prima facie evidence that the document was delivered, and the postmark date is the date of registration. In

Miller, the Sixth Circuit Court of Appeals rejected application of a judicially-created mailbox rule because in enacting IRC § 7502, "Congress explicitly provided two statutory exceptions to the physical delivery rule for the filing of tax claims and returns." 784 F.2d at 730. The Miller court concluded "that the only exceptions to the physical delivery rule available to taxpayers are the two set out in section 7502." Id. at 731.

Not long after deciding Miller, the Sixth Circuit explained how the two statutory exceptions to the physical delivery rule limit a taxpayer's ability to use extrinsic evidence to prove that a return was timely filed. In Surowka v. United States, 909 F.2d 148 (6th Cir. 1990), the taxpayers produced a copy of their return and a page from their bank account records showing a withdrawal of the exact amount needed to pay the tax liability shown on that return. The district court framed the issue as whether the taxpayers "may bring forth circumstantial proof that their [ ] tax return was filed," and held that "filing under the internal revenue code requires both delivery and receipt and that the only two exceptions" to that rule are in § 7502. Id. at 149. The district court then "rejected [the taxpayers]' attempts to prove by circumstantial evidence that their [ ] tax return was timely filed." Id. "'While the result may be harsh, since [the taxpayers] did not send their return registered [mail] they are precluded from setting forth circumstantial proof that their [ ] tax return was

filed.'" Id. at 150 (quoting the decision of the district court). The Sixth Circuit affirmed, finding that Miller rejected "the judicially-created presumption that material properly mailed is deemed received," and limited the exceptions to the two contained in § 7502. Id. Therefore, the taxpayers could not prove timely filing by extrinsic evidence.

The Debtor correctly observes that Miller has been criticized by other courts. In Carroll v. Commissioner, 71 F.3d 1228 (6th Cir. 1995), the Sixth Circuit recognized some of the criticism, to the point where the "court was invited, not long ago, to reconsider Miller and Surowka in an en banc proceeding." Id. at 1232. There were not enough votes for rehearing. "Unless the Supreme Court or Congress should decide otherwise, therefore, Miller and Surowka will remain good law in the Sixth Circuit." Id. The Sixth Circuit's view of the narrowness of the exceptions to the physical delivery rule was reaffirmed in Stocker v. United States, 705 F.3d 225 (6th Cir. 2013). The taxpayers' "failure to produce evidence that would satisfy either of [§ 7502]'s two specified exceptions [was] fatal to their suit for a refund." Id. at 233. As recently as last year, Miller was reaffirmed by the Sixth Circuit, although in an unpublished opinion. See Allred v. United States, 689 Fed. Appx. 392, 394-95 (6th

-12-

Cir. May 9, 2017).  Despite the Debtor's criticism, <u>Miller</u> is binding precedent on this Court.[2]

The filing of the 2008 return by mail

As noted earlier, the Debtor first argues that the 2008 return was filed by Gross by mail.  In support, Barrow testified at his deposition that he prepared the return, signed it on June 1, 2009, and "gave it to the Lothamer person," whom Barrow identified as Gross.  Barrow then testified that Gross "sent it over to IRS to the revenue officer."  Barrow concluded that "I mean as far as we knew, he filed it with the revenue officer."  Gross testified at his deposition that he did not recall when he received the return nor did he "recall sending it in."  For her part, Cooley testified at her deposition that she only "vaguely" recalled the Debtor's and Barrow's case, and offered no testimony one way or the other as to whether she received the 2008 return from Gross by mail.

The Debtor's evidence that the 2008 return was filed by mail consists solely of the testimony of Barrow and Gross.  The Debtor has not come forward with any evidence of a postmark, or certified or registered mail receipts, of the kind required

---

[2] In her response, the Debtor argues that the Court is not required to follow <u>Miller</u>, because <u>Miller</u> conflicts with the standard for summary judgment set forth by the Supreme Court in <u>Anderson</u>, 477 U.S. 242 (1986).  The Court sees no conflict.  <u>Miller</u> construes a rule of law set forth in a statute.  It does not intrude on the Supreme Court's summary judgment standard in <u>Anderson</u>.  The Court must follow both <u>Miller's</u> construction of the IRC, and <u>Anderson's</u> standard of review of the Motion.

-13-

by the statutory exceptions to the physical delivery rule contained in § 7502(a) and (c). Under <u>Miller</u>, the Debtor is barred from using any other extrinsic evidence to support delivery by mail. Therefore, there are no genuine issues of material fact in dispute regarding whether the 2008 return was filed by mail. It was not.

Before leaving the Debtor's argument regarding the mailing of the 2008 return, there is one other related issue raised by the Debtor that requires attention. The Debtor urges the Court to draw an adverse inference against the IRS, and find that the 2008 return was indeed filed by mail in 2009, based on the fact that the IRS no longer has its 2009 paper files regarding the 2008 return. Cooley's deposition testimony shows that those records would have contained documents such as letters of transmittal and notations of any communications with the Debtor, Barrow or Gross. In response, the IRS explains that the IRS' Integrated Collection System files from that time are no longer available because the IRS has only a three year retention policy. The three years runs from when the file is closed. In this case, once the IRS approved the installment agreement in July, 2009, the file was closed and the records would have been purged three years after that.

In the Sixth Circuit, there are three elements that must be shown in order for a court to draw an adverse inference from the destruction of records.

> [A] "party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control

over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to [a] party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

Stocker v. United States, 705 F.3d 225, 235 (6th Cir. 2013) (quoting Beaven v. U.S. Dep't of Justice, 622 F.3d 540, 553 (6th Cir. 2010)).

In this case, the Debtor fails to establish the first two elements. The Debtor attached to her response to the Motion over 1200 pages of IRS internal policies regarding records, but the Debtor does not cite to any provision, either in those materials or otherwise set by statute or case law, that requires the IRS to preserve paper records from 2009, nor does the Debtor present any evidence to suggest that the IRS had a culpable state of mind when it destroyed such records after three years. That was still several years before the Debtor filed her Chapter 7 case, which was the first date that such records could potentially have any relevance to a nondischargeability adversary proceeding. The Court therefore denies the Debtor's request to draw an adverse inference against the IRS because it no longer has the paper files from 2009.

<u>The filing of the 2008 return by fax</u>

The Debtor next argues, in the alternative, that the June 16, 2009 fax from Gross to Cooley constituted delivery of the 2008 return for filing. Because delivery

-15-

of her 2008 return was accomplished through means other than mailing, the Debtor contends that Miller's narrow reading of § 7502 does not apply.

The IRS counters with four arguments. First, a fax is not a permissible method of delivery of a tax return. Second, the place for filing a return is prescribed by statute, and does not include a revenue officer. Third, a return must have the original signature of the taxpayer. Fourth, the 2008 return that was sent with Gross's June 16, 2009 fax was just a courtesy copy, not intended for filing. The Court will address these arguments in sequence.

First, it is true that the main focus of § 7502 is on returns and other documents that are sent by the U.S. mail, but the statute does not make the U.S. mail the exclusive mode of delivery. Section 7502(f) also refers to other "designated delivery services" and "equivalents of registered and certified mail" that allows for electronic filing and mail by private delivery services. In addition, IRC § 6091(b)(4) provides for delivery of a hand-carried return. Neither the IRS nor the Debtor cite any statute, regulation, or controlling case law that expressly allows or prohibits delivery by fax. Further, Cooley admitted at her deposition that, on the "rare occasion," she had received a return for filing by fax. In light of the additional methods of delivery expressly allowed by statute, and Cooley's acknowledgment of at least some returns having been received by fax, the Court finds that it may look beyond the two exceptions in

<u>Miller</u>, if there is evidence that a return has been delivered by means other than by U.S. mail.

Second, the IRS argues that even if delivery of a return may be made by fax, the fax by Gross did not deliver the Debtor's 2008 return to the proper place for filing. For authority, the IRS cites the general rule in IRC § 6091(b)(1) that states that for persons other than corporations, "a return . . . shall be made to the Secretary – (i) in the internal revenue district in which is located the legal residence . . . of the person making the return, or (ii) at the service center serving the internal revenue district referred to in clause (i), as the Secretary may by regulations designate." Treasury Regulation § 1.6091-2(a)(1) provides that "income tax returns of individuals . . . shall be filed with any person assigned the responsibility to receive returns at the local Internal Revenue Service office that serves the legal residence . . . of the person required to make the return." The IRS also cites <u>Friedmann v. Commissioner</u>, 82 T.C.M. 381, 2001 WL 883222, at *7 ( Aug. 7, 2001) ("Clearly, the revenue agent was not the prescribed place for filing those returns pursuant to section 6901(b)(1).").[3]

---

[3] The tax court, like the bankruptcy court, is an Article I court. "[W]hile the Tax Court's opinions . . . may be illustrative, they have no precedential value in law . . . ." <u>Klein v. United States</u>, 94 F. Supp. 2d 838, 844, 846 (E.D. Mich. 2000); <u>see also</u> <u>Rhoades, McKee & Boer v. United States</u>, 822 F. Supp. 445, 449 (W.D. Mich. 1993) (citation omitted), <u>aff'd in part and rev'd in part on other grounds</u>, 43 F.3d 1071 (6th Cir. 1995) ("Decisions of the Tax Court do not bind district courts. They are, however, entitled to considerable weight.").

However, there is some contrary authority that supports the Debtor. Even though she had no recollection of the Debtor's 2008 return, Cooley testified at her deposition that taxpayers sometimes did personally give her a return or mail it directly to her. Further, the IRS has conceded in other contexts that it may be permissible to file a return with a revenue officer rather than the IRS service center. On August 20, 1999, the IRS Chief Counsel Advice directly stated in its Memorandum For District Counsel, IRS CCA 199933039, 1999 WL 634177, that "[r]evenue officers may request taxpayers to file delinquent returns directly with the revenue officer" and that they "have the authority to request and receive hand-carried, delinquent returns." Based on Cooley's testimony and on the conflicting authorities cited above, the Court rejects the argument of the IRS that a return can never be filed with a revenue officer.

Third, in support of its argument that the return must bear the original signature of the taxpayer, the IRS cites IRC §§ 6061(a) and 6091(1)(b), and tax court opinions in Friedmann v. Commissioner and Turco v. Commissioner, 74 T.C.M. 1437, 1997 WL 786967 (Dec. 23, 1997). Section 6061(a) provides that a return "shall be signed in accordance with forms or regulations prescribed by the Secretary," but it does not expressly require an original or wet ink signature. Section 6091(b)(1) addresses the place of filing for persons other than corporations, but it too is silent as to any original signature requirement.

In <u>Friedmann</u>, the IRS had no record of receiving the taxpayer's returns for 1989 and 1990.  2001 WL 883222, at *2.  In 1992, the taxpayer then gave a revenue agent photocopies of the two returns.  Following trial, the court held that the subject returns were not filed in 1992 because there was nothing in the record to show that the taxpayer intended his delivery of the documents to the revenue agent to constitute the filing of his returns.  <u>Id.</u> at *7.  While it is true that there was no wet-ink original signature on the photocopies, the court's opinion did not emphasize that point.  Instead, the opinion turned more on the evidence that the taxpayer did not tell the revenue agent that the returns had not previously been filed and the revenue agent received the returns thinking that they were simply copies that he had requested.  The court noted that there was no evidence that the revenue agent ever treated these copies as "filed."  <u>Id.</u>

In <u>Turco</u>, the taxpayers alleged that they had timely mailed their returns, but had no evidence to support this contention.  The IRS had no record of receiving the returns.  The taxpayers then hand-delivered photocopies to the revenue agent.  The court held that "[a] return is valid only if it is verified under penalty of perjury by an original signature and is filed in the appropriate office."  1997 WL 786967, at *2.  As support for this holding, the <u>Turco</u> court cited <u>Beard v. Commissioner</u>, 82 T.C. 766, 1984 WL 15573 (1984).  In <u>Beard</u>, a tax protester filed his returns using intentionally

and deceptively tampered forms, which he signed. The court held that the taxpayer's wages constituted gross income, and the tampered forms did not constitute a proper filing of the returns. Id. at 773, 777. There was no issue before the court concerning whether a wet-ink original signature is required. The Sixth Circuit affirmed the tax court decision on both grounds but was silent as to any wet ink original signature requirement. See Beard v. Comm'r, 793 F.2d 139 (6th Cir. 1986). The Beard decision does not support the holding in Turco regarding the need for a wet-ink signature.

Another recent tax court case also addressed a photocopied return. In Hulett v. Commissioner, 150 T.C. 4, 2018 WL 618712 (Jan. 29, 2018), the taxpayers were residents of the U.S. Virgin Islands. They filed their federal income tax returns with the Virgin Islands Bureau of Internal Revenue, which electronically sent photocopies of the first two pages of the returns to the IRS. In a later dispute, the IRS insisted that the returns "had to have original signatures (i.e., wet-ink signatures)." Id. at *17. The IRS argued "it has been [the Commissioner's] longstanding custom that an original signature is required," and the court agreed that "Congress granted the IRS great leeway in prescribing the signature method." Id. The tax court was "[n]onetheless . . . unable to find anything in the Code or regulations that explicitly calls for an 'original' signature." Id. To the contrary, the court noted that "the IRS does accept

-20-

returns without original signatures. In [a 1968 revenue ruling], the IRS concluded that it would accept Forms 1040 and Forms 1040NR with facsimile signatures." Id. (citing Rev. Rul. 68-500, 1968-2 C.B. 575). In conclusion, the Hulett court explained that it did "not hold today that photocopied or scanned signatures are always sufficient to make a return valid." Id. at *18. Rather, under the specific circumstances and the "strong authenticating safeguards in place in this case" between the Virgin Island Bureau of Internal Revenue and the IRS, the court held that the photocopied signature was a minor and not seriously misleading error. Id. (citation omitted).

The Court agrees with Hulett and rejects the argument that, as a matter of law, a copy of a signature rather than a wet-ink original signature necessarily invalidates the filing of a return. In addition, the Court cannot help but notice that the IRS's argument to the contrary is belied by what eventually happened in this case. Smith's declaration states that the Debtor's 2008 return was emailed by Lothamer to Smith on January 15, 2016, and that Smith then caused it to be filed, despite the fact that it was just a copy of the return without a wet-ink original signature.

The IRS's fourth and final argument is that even if a copy of a return may sometimes be filed by a fax to a revenue officer, there is no dispute that this is not what happened here. The IRS is correct. The fax sent by Gross to Cooley on June 16, 2009 expressly states that it "enclosed a copy" of the 2008 return. It does not say,

either directly or implicitly, that this copy was intended for filing. This is consistent with the testimony by Gross at deposition. Gross testified without qualification that his general practice was to mail a return by standard U.S. mail, and not fax it. Moreover, Gross testified that when he did mail a return for filing, he would mail it directly to the service center, not to a revenue officer. Gross does not remember who gave him the 2008 return, but when he sent it by fax to Cooley on June 16, 2009, he did so to provide her with a "courtesy copy" as he was negotiating an installment agreement.

There is no evidence in the record to create a genuine issue of fact regarding the June 16, 2009 fax and the 2008 return enclosed with it. Barrow testified at his deposition that he gave the return to Gross to mail in for filing. Gross testified that when he filed returns, he did so by mail, not fax, and that the copy of the 2008 return that he did fax was a courtesy copy that was not intended for filing. Cooley remembered very little about the return but in any event did not testify that it was filed by fax. Assuming, as the Court must, that all of that testimony is true, that is not sufficient to controvert the Form 4340, Certification of Assessments, Payment, and Other Specified Matters, which shows that the Debtor's 2008 return was not filed until January 15, 2016.

-22-

The Debtor makes one final argument to try to show the existence of some issue of fact regarding the 2008 return, based on the installment agreement that the IRS approved on July 10, 2009. The Debtor notes that the proposed installment agreement that Gross faxed to Cooley on July 6, 2009 included the Debtor's 2008 taxes. While the Debtor concedes that the July 10, 2009 IRS approval of the installment agreement does not include the Debtor's 2008 taxes, the Debtor argues that the IRS would not have approved the installment agreement unless the Debtor's 2008 return was filed. In support, the Debtor cites IRS policy manuals that require all "current returns" to be filed before the IRS will approve an installment agreement. For further support, the Debtor also points to Cooley's testimony at her deposition. Cooley testified that her general practice before entering into an installment agreement was to require that all delinquent tax returns be filed so that any corresponding debt could be included in the agreement. Cooley also explained that she would include a tax year in an installment agreement based on the taxpayer's representation that the return had been filed, even if the IRS had no record, so long as she was provided a copy.

Here's the problem with the Debtor's argument. The 2008 return was not delinquent, nor were there any current taxes owing under it, at the time the IRS approved the installment agreement with the Debtor and Barrow. The Debtor and Barrow had obtained a six month extension to file their 2008 return. It was not due

until October 15, 2009.  Because it was not delinquent, it posed no obstacle to the IRS approving the installment agreement.  And because the 2008 return had not been filed at the time that the IRS gave its approval, the installment agreement did not mention either the 2008 return or any taxes for 2008.  The Debtor's contention that the IRS's approval of the installment agreement means that the 2008 return must have been filed is not supported by any probative evidence in the record or applicable legal authority.

The Court concludes that there may be circumstances where <u>Miller</u> does not limit the Court's ability to consider evidence outside of a postmark or registered or certified mail receipt, where the tax return in question was delivered to the IRS through means *other than U.S. mail*.  In this case, the Debtor has provided evidence of a fax transmission of a copy of the Debtor's 2008 return to a revenue officer. However, the Debtor has not come forward with evidence to show that this fax transmission was intended to file the Debtor's 2008 return or that it was treated as filed by the IRS.  The uncontroverted evidence before the Court shows that there is no genuine issue of material fact in dispute regarding the filing of the 2008 return. The IRS records show that it was filed on January 15, 2016, less that two years before the Debtor filed her Chapter 7 petition.  The Court will therefore grant the Motion as to the taxes shown in the Debtor's 2008 return.

## The 2010 Return

Application of the physical delivery rule to the Debtor's 2010 return is uncomplicated. The Debtor's sole contention regarding this return is that it was filed when Barrow mailed it by certified mail. In these circumstances, <u>Miller</u> controls because delivery was allegedly by U.S. Mail. The Debtor has come forward with no evidence of a postmark or registered mail receipt for the 2010 return. Any other extrinsic evidence is barred by <u>Miller</u>. There is no genuine issue of fact that the 2010 return was not filed until January 15, 2016, which was after the date it was due, and after two years before the date of the petition. The Court will therefore grant the Motion as to the taxes shown on the Debtor's 2010 return.

## **Conclusion**

The record leaves the Court with little doubt that the Debtor sincerely believes that her 2008 and 2010 returns were filed timely. But that belief aside, the circumstantial evidence the Debtor relies on is insufficient to create a genuine issue of fact as to whether the 2008 return was timely filed and is irrelevant to the filing of the 2010 return. Accordingly, for the reasons stated, the Court will grant the Motion. Because the grant of the Motion as to count I is based on the consent of the IRS and the Debtor, the parties are directed to submit a proposed order for summary judgment

as to that count.  The Court will enter its own separate order as to granting the Motion as to count II, consistent with this opinion.

**Signed on August 20, 2018**



/s/ Phillip J. Shefferly
_____
**Phillip J. Shefferly**
**United States Bankruptcy Judge**

-26-